Statement of the Case.
MONROE, C. J.
It appears from the application and returns herein that on January 20, 1919, relator filed a petition in the district court for the parish of Bossier, alleging that it owns a producing gas well, in good working order, in section 3, township 16, range 11, of that parish; that there is another well in the same section which was drilled by one White, after the completion of relator’s well, and which, by reason of defects, has, for a long time, been running wild and wasting gas; that the conservation commission of Louisiana, whereof M. L. Alexander is president, undertook to control the “White” well, and it being alleged that relator’s well was the cause of, or a contributor, to the condition of the other, a committee was appointed to look into the matter, which it did, and reported that the trouble with the White well was attributable to no defect in relator’s well; that, for further assurance on that point, relator “killed” its well on May 2d, and allowed it to remain dormant and unproductive until August 16, 1918, and the White well remained unaffected; that the Conservation Commission, through its president, has nevertheless notified petitioner that it intends to take possession of petitioner’s well and either kill it entirely or practically, by permitting it to blow for a number of days, and that it will so act, unless restrained by injunction; that, in view of the facts stated, it is without authority so to proceed; that, if it permits the well to blow for IS days, as proposed, it will cause a waste of 979,000,000 cubic feet of gas, or destroy the well, and will materially damage the gas field in the vicinity, where relator has valuable interests, and that the injury to relator will be irreparable; that the only authority that can be appealed to for the threatened proceeding is Act 71 of 1906, which, however, does not empower the commission to take possession of gas wells, other than such as are wild, uncontrollable or burning; and that, as relator’s well is in neither of those classes, it has no right to interfere with it.
The prayer of the petition is for service on the Conservation Commission of Louisiana, and for an injunction restraining it, its officers, agents, and employes, from attempting to take possession of the well in question, or from interfering with relator’s possession and operation of the same, and ultimately perpetuating the writ. And, in the absence of the judge from the parish, the clerk of the court issued the writ, as prayed for, on reiator’s giving bond in the sum of $2,500.
There appears annexed to the petition a copy of a letter, with the heading, “Department of Conservation, New Orleans, January 17, 1919,” and purporting to be signed “M. L. Alexander, Commissioner,” in which the writer informs relator that, “under the direction of the agents of this department, and according to the advice of the ablest men in the oil and gas business in the Caddo section,” many thousands of dollars have been expended in attempting to stop the waste from the White well, and further as follows (quoting in part):
*965 “I have come to the conclusion, from all the facts laid before me, that it is no longer useful to undertake to stop the flow from the above well; * * * that all indications point to the fact that a well owned by your company * * * is the real cause of this waste, through what we believe to be a break in your well, allowing the gas to escape * * * into a stratum of earth and, through the passage, making its way to the White Bros, well, and there coming out to the surface along the outer side of the casing. * * *
“We propose, first, to take possession of your well, with your consent, and open your well and allow the same to run not exceeding 15 days; the purpose being to determine if such course will have any effect on the other well. According to the results, we will be guided as to whether it will be necessary to take further proceedings with your well, either to remedy or to kill the same completely, or otherwise as may be necessary. In the event that, after these proceedings are taken, it be shown that your well is not the well causing the waste of gas in that section, then we think that you would be entitled to a reimbursement, at a fair price, from” (meaning, perhaps, “for”) “the gas allowed to flow during the period of time referred to. On the other hand, of course, if it be determined that the present waste is coming from your well, through the fissures in the earth, then it is clear that we would be entitled to stop the flow by any proper measures, including the killing of your well, and that this be at your expense. In the event you do not choose to consent to the proposition immediately above, then we are to take possession under the provision of law, as first above stated.”
The citation and writ of injunction were returned as having been served on January 21, 1919, by leaving them at the office of the defendant Conservation Commission of Louisiana in the city of New Orleans, in the hands of the ornithologist, a person apparently over the age of 18 years, etc. On January 29th following, the “Department of Conservation,” without having appeared in the proceeding above mentioned, instituted a suit in the same court and obtained a counter injunction — issued by order of the judge and prohibiting relator “from interfering with the Department of Conservation in its proceeding to take possession” of the well in question, “or from in any manner interfering with the said Department of Conservation in either taking possession of said well or in its proceedings in regard to the same hereafter.” The petition upon which the writ issued sets forth the views of the “Department,” as to the gas situation about as they are stated in the letter from which we have quoted, to which are added other allegations, including the following:
“The said Atlas well” (meaning relator’s well) “was completed * * * a little before the White Bros, well; both wells draw from the same gas-bearing stratum, at about 2,500 feet; and petitioner is of the opinion that, through faults in the Atlas well, either in its seat in the gas-bearing stratum, or through a split at some point in its pipe, above the gas-bearing stratum, gas is escaping into the so-called Natchitoches sand, a gas-bearing sand rock,' located at about 875 feet in depth, and is making its way through the said sand rock from the Atlas well to the White Bros, well and escaping alongside or through the same., * * * Petitioner alleges, specifically, however, that, whether the opinion as entertained by it, as to the waste coming from the Atlas well in the method described, is or is not correct, and regardless of whether the opening of the Atlas well will, immediately, disclose the necessary facts to determine the correctness of this opinion, yet, nevertheless, it is convinced, both from the facts heretofore set forth and according to the advices of the aforesaid advisory committee, that the next step in the performance of its said duty is to take possession of the said Atlas well.”
As authority for its proceeding, the petitioner quotes as follows from Act 268 of 1918, p. 513, to wit:
“Sec. 3. * * * That the Department of Conservation is granted full power and authority to prevent the waste of natural gas, * * * and it is made the imperative duty of the said Department * * * to make frequent inspection * * * of the natural.gas fields of the state so as to carry out the provisions of this act, and if any waste * * * is found to exist, as waste, * * * the said department shall proceed at once to prevent or stop the waste or improper use of such natural gas; and to carry out the provisions of this act and existing laws the Department of- Conservation is empowered to sue out an injunction without giving bond in any of the district courts of *967 the state to prevent and prohibit the said waste of natural gas, * * * and in all such proceedings it shall be the duty of the Attorney General of Louisiana to appear in behalf of said department, which injunction shall not be dissolved on bond.”
Opinion.
[1] In Marin v. Thierry, 29 La. Ann. 362, a defendant in injunction took a rule on plaintiff to show cause why the injunction should not be dissolved, and, the rule having been made absolute, plaintiff in injunction appealed to this court, where it was held that the service of the rule was bad, for which reason the judgment dissolving the injunction was reversed and the case remanded. That case has been cited in Gravais v. Falgoust, 34 La. Ann. 99, Pike v. Bates, 34 La. Ann. 391, Van Halen v. Judge, 50 La. Ann. 642, 23 South. 608, and Board v. Iberia, etc., R. Co., 117 La. 943, 42 South. 434, as authority for holding that an injunction once granted cannot be dissolved upon an ex parte application; and in the case last above mentioned it was said that—
“The same rule applies whether the dissolution be effected by rule to dissolve or by a counter injunction.”
In State ex rel. Moore v. Judge, 37 La. Ann. 119, it was said:
“It is well established that, as a rule, notice to dissolve an injunction should be given to the party who obtained the writ, although, in extreme cases, the judge, in his discretion, may dissolve, at chambers and ex parte.”
And the syllabus of the opinion (though not the text) in the case of Van Halen, supra, reads, in part:
“The general rule is that injunctions should not be dissolved on the ex parte application of defendant, and the writ of certiorari will issue to reinstate the injunction when dissolved on such ex parte application. without any hearing of the plaintiff.”
It would appear hardly necessary to say that to issue ex parte an injunction, restraining the operation of an injunction previously issued, amounts to the same thing as an ex parte dissolution of the injunction previously issued. What the court meant in the case above cited, by saying that, “in extreme cases, the judge, in his discretion, may dissolve at chambers and ex parte,” may, perhaps, be inferred from the ruling in the ease of Wells v. City of New Orleans, 32 La. Ann. 676, to which we are referred by the respondent judge, and in which the keeper of a music and dance hall having obtained an injunction restraining the city of New Orleans from closing or interfering with his business and from collecting $1,500 as license tax, was unconstitutional, the city, by way of demand in reconvention, prayed for an injunction prohibiting plaintiff from carrying on his business, and, the trial court having refused to issue the writ, and the city having appealed, this court reversed that ruling and directed that the writ be issued. In the course of its opinion the court referred to “the case of the State ex rel. City of New Orleans v. Judge of the Sixth District Court, * * * recently decided,” etc. (reported in the same volume [32 La. Ann.], p. 549), in which it had refused the application of the city for a writ of mandamus to compel the issuance of the counter injunction, on the ground that the remedy was by appeal.
In assigning its reasons in that (the mandamus) case, the court (among other things) said:
“Now, in this very case, the court [district court] had actually granted an injunction in favor of Wells and against the city, based upon the ground that this ordinance was null and void; it had considered and denied a motion to dissolve; and the injunction was subsisting at the very moment when the city applied for the counter injunction. Under such circumstances, the court had a right to consider the question of the validity of this ordinance as an ingredient of the question whether the case was a proper one for an injunction. It was a judicial question proper to be decided according to the conscience of the judge. If there be error, it must *969 be remedied by appeal.” State ex rel. City v. Judge, 32 La. Ann. 551.
In the opinion handed down on the appeal, it is said (32 La. Ann. 678, 679):
“It can hardly be contended, and we surely will not recognize the proposition, that the judge of the Sixth district court by granting to Wells the preliminary injunction intended or contemplated to forbid the city a resort to legal proceedings and auxiliary legal remedies, or, in other words, virtually enjoined itself from the exercise of judicial powers.”
It is clear therefore that the case as cited by the learned respondent has no bearing upon the question whether an injunction, once granted, can properly be dissolved without notice to the party by whom it was obtained, since the question of the propriety of the issuance of the injunction there in controversy was most thoroughly litigated, before its issuance on the rule in the trial court and on the application for mandamus to this court. The view expressed on the appeal seems to be somewhat in line with the previous ruling of the court in City v. Becker, 31 La. Ann. 645, in which Becker had applied for an injunction such as Wells had applied for, and a rule nisi had issued when the city obtained an injunction similar to that for which it had applied in the Wells Case, whereupon Becker ruled the city to show cause why its injunction should not be dissolved, and, both of his rules having been tried together, the court denied his application for injunction and refused to dissolve the injunction issued on behalf of the city, saying:
“This right of the city is wholly incompatible with the right of the taxpayer to enjoin the city in the collection of the license tax, or from interfering with him in carrying on his business. His application for an injunction is the refusal to pay the license tax, and would authorize the city to demand the injunction to prevent the continuance of the business.”
The rale in regard to conflicting injunctions which appears to be generally accepted is stated by Mr. High, as follows:
“In the exercise of its jurisdiction to restrain proceedings at law, a court of equity usually requires that a bill should be filed, or an independent suit instituted for the purpose of obtaining relief by injunction. This course is, however, unnecessary when a suit in equity is already pending in which the necessary relief may be had. And where a bill for an injunction against an action at law discloses the pend-ency of a prior suit in equity pertaining to the same subject-matter, and in which the relief sought by injunction in the new suit might have been obtained by motion or petition in the cause, an injunction granted in the second cause will be regarded as improvidently allowed and will be accordingly dissolved.” High on Injunctions, vol. 1, p. 45, § 55.
We see no reason why the course thus indicated should not have been followed in this case; or why the Department of Conservation should be allowed to take the irretrievable steps proposed by it without a judicial inquiry in which relator will be afforded an opportunity to be heard.
[2] We are of opinion that the objection made by the respondent that the “Conservation Commission,” as described in the petition of the relator in the suit 7640 of the district court, and the “Department of Conservation,” as the petitioner in the suit 7649 describes itself, are not sufficiently identified, is not well founded- The defendant in the suit 7640 may except in that suit on the ground that its.official title is not correctly given, but that it is generally known as the “Conservation Commission,” is evidenced by the fact that the act of 1918 (No. 268, p. 513 et seq.) carries that title in the side page notes indicating the contents of the different sections, and we imagine that the act was prepared' under the direction of the Department of Conservation.
For the reasons thus assigned, it is ordered that the writ of prohibition issue as herein prayed for, and that the respondent judge be prohibited from enforcing the writ of injunction issued herein at the instance of the Department of Conservation. It is further ordered that the Department of Conservation pay the cost of the proceeding.